905 P.2d 626

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rozina GEORGE, Defendant–Appellant.**

No. 21554.

Supreme Court of Idaho,
Idaho Falls, September 1995 Term.

Nov. 2, 1995.

Candy L. Jackson, Pocatello, for appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

SILAK, Justice.

Appellant Rozina George (George) appeals from the district court's reversal of the magistrate's dismissal of traffic infraction citations issued against her by an Idaho State Police officer. George is an enrolled member of the Shoshone–Bannock Tribes and was cited while driving on the Fort Hall Reservation. She also appeals her conviction before the magistrate on a charge of delaying and obstructing an officer. We vacate the magistrate's dismissal of the traffic infractions, and remand the case for further proceedings; we affirm the delaying and obstructing conviction.

## I.

### FACTS AND PROCEDURAL BACKGROUND

George is an enrolled member of the Shoshone–Bannock Tribes. On two separate occasions Idaho State Police officers stopped her for traffic violations on U.S. Highway 91, which is maintained by the state of Idaho and is within the boundaries of the Fort Hall Indian Reservation. Traffic citations were issued both times.

The first stop occurred on February 15, 1993. An Idaho State Police officer stopped George and cited her for failure to stop at a posted stop sign under I.C. § 49–807(2), and for failure to provide proof of insurance under I.C. § 49–1232.

On April 11, 1993, an Idaho State Police officer stopped George for traveling 66 m.p.h. in a 55 m.p.h. zone. The officer asked George to produce her driver's license, registration and proof of insurance. George refused to show the officer the requested documents. She stated she was a member of the Shoshone–Bannock Tribes and as a result believed the officer did not have the authority to stop her on the reservation. After several requests and refusals, the officer placed George under arrest for obstructing and delaying an officer. During the arrest, physical force was used by and against George. The officer issued two citations: the first was for speeding under I.C. § 49–654(2) and for failing to provide proof of insurance under I.C. § 49–1232; the second citation was for obstructing and delaying an officer by refusing to produce a driver's license, registration and proof of insurance under I.C. § 18–705, and for resisting arrest under I.C. § 18–705.

At all relevant times, the Shoshone–Bannock Tribes have maintained their own federally-trained police force, their own federally-approved traffic laws and their own tribal court system. In state magistrate court, George moved to dismiss the traffic infractions based on a lack of subject matter jurisdiction to prosecute an enrolled member of an Indian tribe for infractions committed within the reservation's boundaries. George also moved to dismiss the resisting arrest charge due to the "invalidity of the underlying infraction charges." The magistrate dismissed the infraction charges and ruled that the infractions were civil/regulatory in nature and consequently the state did not have jurisdiction to enforce infraction charges against an enrolled member of an Indian tribe. The two parties agreed to dismiss the charge of resisting arrest and allow the magistrate to decide whether the state had jurisdiction to

prosecute the charge of delaying and obstructing an officer. The magistrate found that the state did have jurisdiction over the delaying and obstructing charge and found George guilty of the charge.

The state appealed the dismissal of the traffic infraction charges and George appealed her conviction for obstructing and delaying an officer to the district court. The district court affirmed the conviction for obstructing and delaying an officer, but reversed the magistrate on the traffic infraction charges. The district court found that Idaho accepted criminal jurisdiction for matters arising within Indian country pursuant to the jurisdiction grant under Pub.L. 83–280, as amended, 18 U.S.C. §§ 1161–62, 25 U.S.C. §§ 1321–22, 28 U.S.C. § 1360 (1953). Further, the court found that it was the policy of the state of Idaho to consider traffic infractions as criminal in nature. Thus, the court concluded that the state had jurisdiction to prosecute members of a tribe for traffic infractions committed on state maintained roads within the boundaries of a reservation. George appealed to this Court.

## II.

### ISSUES ON APPEAL

1. Whether the state of Idaho has jurisdiction over traffic infractions committed by enrolled members of a tribe on state maintained roads within their reservation.

2. Whether the magistrate was correct in finding George guilty of obstructing and delaying an officer by refusing to produce her driver's license, registration and proof of insurance.

## III.

### ANALYSIS

**A. THE STATE OF IDAHO HAS JURISDICTION OVER TRAFFIC INFRACTIONS COMMITTED BY ENROLLED MEMBERS OF A TRIBE ON STATE MAINTAINED ROADS WITHIN THEIR RESERVATION.**

■ Preliminarily, we note our standard of review. When this Court reviews a case appealed from a district court's appellate review of a magistrate's decision, we make an independent appellate review of the magistrate's decision, giving due regard to the district court's ruling. *Ausman v. State*, 124 Idaho 839, 840, 864 P.2d 1126, 1127 (1993). Jurisdictional issues, such as those raised here by George, are legal questions subject to free review on appeal. *Lockhart v. Dept. of Fish & Game*, 121 Idaho 894, 895, 828 P.2d 1299, 1300 (1992); *Gage v. Harris*, 119 Idaho 451, 452, 807 P.2d 1289, 1290 (Ct.App.1991).

George argues that the state does not have jurisdiction over tribal members on state maintained highways within the boundaries of the reservation for state traffic infractions. We disagree and for the reasons stated below, we vacate the magistrate's dismissal order.

### 1. *Introduction*

■ Congress has plenary power over affairs arising within Indian country, unless it has provided otherwise and unless the state has correspondingly assumed such jurisdiction. *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261, 36 L.Ed.2d 129, 135 (1973); *Odenwalt v. Zaring*, 102 Idaho 1, 2, 624 P.2d 383, 384 (1980). In 1953, Congress enacted Public Law 83–280 which mandated in Sections 2 and 4 that certain enumerated states assume jurisdiction over Indian offenses committed by or against Indians in the areas of Indian country listed for those states, and that these same states assume jurisdiction over civil causes of action between Indians, or to which Indians are parties, which arise in the areas of Indian country listed for those states. Although the state of Idaho was not one of the enumerated states, Section 7 of Pub.L. 280 provided:

The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such a manner as the people of the State shall, by

affirmative legislative action, obligate and bind the State to assumption thereof.

Pub.L. 280, § 7, 67 Stat. 588, 590 (1953) (now 25 U.S.C. § 1321, as amended).[1]

In accordance with Pub.L. 280, Idaho enacted I.C. § 67–5101 in 1963 and assumed jurisdiction over Indian affairs in the following areas:

**67–5101. State jurisdiction for civil and criminal enforcement concerning certain matters arising in Indian country.**—The state of Idaho, in accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:

A.  Compulsory school attendance

B.  Juvenile delinquency and youth rehabilitation

C.  Dependent, neglected and abused children

D.  Insanities and mental illness

E.  Public assistance

F.  Domestic relations

G.  *Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivision thereof.*

(Emphasis added.)

Pub.L. 280 thus provided the basis for Idaho's assumption of state court jurisdiction over certain matters arising in Indian country and involving Indians.

2.  *In Idaho, a Traffic Infraction is a Violation of Laws Which are Criminal/Prohibitory in Nature and Therefore Do Not Infringe on Tribal Sovereignty.*

■  George argues that infractions are offenses that have been "decriminalized," and

therefore have been placed beyond the state's jurisdiction when committed by tribal members within their own reservations. George bases her argument primarily on two United States Supreme Court cases interpreting Pub.L. 280.

■  Our analysis is informed by a line of federal cases beginning with *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), which involved the question whether the state and county could levy a personal property tax on a mobile home owned by a member of a tribe and situated on a reservation. The Supreme Court considered the language of section 4 of Pub.L. 280 which provided:

[E]ach of the States ... shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed ... to the same extent that such State ... has jurisdiction over other civil causes of action, and those civil laws of such State ... that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State ...

426 U.S. at 377, 96 S.Ct. at 2106, *quoting* Section 4(a), 28 U.S.C. § 1360(a). After examining the legislative history, the Court concluded that Congress had only intended by this section to provide a forum for the resolution of civil disputes involving Indians, and that Congress had not intended to confer upon the states general civil regulatory powers over reservation Indians. *Id.* at 379–90, 96 S.Ct. at 2106–12. Thus, under *Bryan*, when a state seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature and thus fully applicable to the reservation under section 2, or civil in nature and applicable only as it

---

1.  Although the Civil Rights Act of 1968 repealed Section 7 of Pub.L. 280, it did not rescind those areas of jurisdiction which the state had already assumed prior to the repeal of Section 7:

Section 7 of the act of August 15, 1953 (67 Stat. 588), is hereby repealed, but such repeal

shall not affect any cession of jurisdictions made pursuant to such section prior to its repeal.

Civil Rights Act of 1968, Pub.L. 90–284, 82 Stat. 73, Section 403(b).

may be relevant to private civil litigation in state court under section 4.

■ *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), and its progeny, followed *Bryan*. *Cabazon* concerned efforts by the state of California to regulate and restrict gambling conducted by two tribes; one tribe operated card games and both tribes operated bingo games. In relying on its earlier holding in *Bryan v. Itasca County, supra,* the Court held that the state could not engage in such regulation. Crucial to the Court's analysis was the fact that the state permitted gambling (including the activities operated by the tribe) with certain restrictions. This background of state law led the Court to conclude that the state's attempts to restrict gambling on the reservations was regulatory, rather than prohibitory. In discussing an earlier case, *Barona Group of Capitan Grande Band of Mission Indians, San Diego County, Cal. v. Duffy,* 694 F.2d 1185 (9th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983), the Supreme Court stated:

> [T]he Court of Appeals drew a distinction between state "criminal/prohibitory" laws and state "civil/regulatory" laws: if the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy ...

We are persuaded that the prohibitory/regulatory distinction is consistent with *Bryan's* construction of Pub.L. 280. It is not a bright-line rule, however; and as the Ninth Circuit itself observed, an argument of some weight may be made that the bingo statute is prohibitory rather than regulatory. But in the present case, the [Ninth Circuit] court reexamined the state law and reaffirmed its [earlier] holding ..., and we are reluctant to disagree with that court's view of the nature and intent of the state law at issue here.

480 U.S. at 209–10, 107 S.Ct. at 1088–89. Thus, the Supreme Court held that "criminal/prohibitory" laws, within areas where the state had assumed jurisdiction, were permissible, while "civil/regulatory" laws might infringe on tribal sovereignty.

■ Of particular interest with respect to the present case is the Court's holding in *Cabazon* that the mere labeling of a statute as criminal or civil would not necessarily control whether it fell into the criminal/prohibitory or civil/regulatory categories. *Cabazon* acknowledged that unregulated bingo was a misdemeanor under state law, but this did not take the state's attempts at enforcement of its laws out of the civil/regulatory category: "[T]hat an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280." *Id.* at 211, *Id.* at 1089.

Additionally, the Supreme Court did not conclude that the absence of express congressional permission for the imposition of the state laws in question automatically prevented the application of·those laws. Rather, in *Cabazon,* the Supreme Court balanced the state interest against tribal and federal interests:

> Our cases ... have not established an inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent. "[U]nder certain circumstances a State may validly assert authority over the activities of non-members on a reservation, and ... in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 331–332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983).

*Id.* 480 U.S. at 214–15, 107 S.Ct. at 1091.

In the present case, George contends that Idaho has decriminalized traffic infractions, thus placing them in the civil/regulatory category, which precludes their application to tribal members within the reservation. *See Bryan v. Itasca County,* 426 U.S. at 379–90, 96 S.Ct. at 2106–12. The definition of "infraction" is found in I.C. § 49–110(4): "Infraction means a civil public offense, not con-

stituting a crime ...." George also relies on *Confederated Tribes of the Colville Reservation v. Washington,* 938 F.2d 146 (9th Cir. 1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992), to support her argument that traffic infractions are civil and not within the purview of Pub.L. 280 for jurisdictional purposes. The issue in *Colville* was the application of the state of Washington's traffic infraction laws (speeding statute) to tribal members within the boundaries of the reservation. In Washington, traffic infractions had been decriminalized and violators were subject to only civil penalties. The Ninth Circuit concluded that the speeding law fell into the civil/regulatory category, and therefore could not be enforced against tribal members within the reservation. Relying on language in *California v. Cabazon Band of Mission Indians, supra,* the court based its decision on the fact that the underlying activity of driving was permitted. Thus, the court reasoned that the speeding statute constituted an attempt at regulation of a permitted activity. 938 F.2d at 148–49.

In the present case, although the facts are similar to *Colville,* Idaho has not "decriminalized" infractions in the same way that Washington did. While the Idaho legislature has characterized an infraction as a "civil public offense" under I.C. § 49–110(4), this Court held in *State v. Bennion,* 112 Idaho 32, 730 P.2d 952 (1986), that for purposes of analysis under the Idaho Constitution, infractions must be considered criminal in nature. The Court held that although the Traffic Infractions Act defines infractions as civil public offenses, infractions must be considered criminal for purposes of analysis of the constitutional right to a jury trial. The Court relied on article 5, § 1 of the Idaho Constitution, which provides in part that "every action prosecuted by the people of the state as a party, against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action." 112 Idaho at 35, 730 P.2d at 955. Washington's constitution does not contain a similar provision.

Further, in a case applying Idaho's statutory double jeopardy provision to infractions, this Court cited *State v. Bennion, supra,* and held:

> We find no basis for distinguishing the nature of traffic infractions in the statutory context, and refuse to cloak them with a criminal character for constitutional purposes only. We hold that art. 1, § 13 of the *Idaho Constitution* effectively nullifies the legislature's designation of infractions as civil public offenses for both constitutional and statutory purposes.

*State v. Lynch,* 126 Idaho 388, 391, 883 P.2d 1080, 1083 (1994). Thus, because it is clear that in Idaho infractions are deemed criminal offenses for purposes of both constitutional and statutory analysis, we hold that traffic infractions fall within the criminal/prohibitory category of laws for purposes of Pub.L. 280 and I.C. § 67–5101G.

While *Bryan v. Itasca County, supra,* and *California v. Cabazon Band of Mission Indians, supra,* established the framework for our holding in the present case, we do not follow *Confederated Tribes of the Colville Reservation v. Washington, supra,* because unlike the state of Washington, this state now characterizes any traffic infraction as criminal in nature. Thus, we hold that pursuant to Pub.L. 280 and I.C. § 67–5101G, the state of Idaho has jurisdiction over George for the alleged infractions occurring on state maintained highways within the boundaries of the Fort Hall Indian Reservation.[2] Therefore, we vacate the magistrate's dismissal of the infractions for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion.

**B. THE MAGISTRATE WAS CORRECT IN FINDING GEORGE GUILTY OF OBSTRUCTING AND DELAYING THE OFFICER BY REFUSING TO PRODUCE HER DRIVER'S LICENSE, REGISTRATION AND PROOF OF INSURANCE.**

■ George next argues that because the state officer had no authority to stop her, the

---

2. The issue was not presented in this case and we do not consider whether the state of Idaho has

exclusive jurisdiction to enforce traffic infractions on the Fort Hall Indian Reservation.

stop was an unreasonable search and seizure under the Fourth Amendment of the U.S. Constitution and art. 1, § 17 of the Idaho Constitution, and that the magistrate erred in convicting her of obstructing and delaying an officer for failure to produce her driver's license. We disagree.

Because we hold above that the state of Idaho did have jurisdiction over George for the traffic infractions which occurred on the state maintained highway within the Fort Hall Indian Reservation, and because the record indicates that the Idaho State Police officer had probable cause to believe that George was exceeding the speed limit, we hold that the stop was valid and did not constitute an unreasonable search. Further, because we hold that the stop was valid, the officer's request for George's license, registration and proof of insurance was a lawful and authorized act, and George's refusal to produce those documents therefore constituted obstructing and delaying an officer in the performance of a duty of his office.

In *State v. Godwin*, 121 Idaho 517, 826 P.2d 478 (Ct.App.1991), *aff'd*, 121 Idaho 491, 826 P.2d 452 (1992), the Court of Appeals held, and this Court affirmed, that there are several reasons for permitting a police officer to ask for a driver's license. First, the court ruled that whether the stop by the police officer is to enforce the traffic laws or to carry out the officer's caretaker duty, the officer should be able to identify the person with whom he or she is dealing with reasonable certainty in order to protect law enforcement personnel from danger. Allowing the officer to identify the motorist also allows the officer to adequately respond to allegations of improper conduct, if any. The court also held that there is a valid public interest in allowing a police officer to run a record check on a driver's license so that the officer can make a *correct* identification of the person with whom he or she is dealing, and to determine the validity and status of the driver's license in question. *Id.* 121 Idaho at 520, 826 P.2d at 481.

With respect to the present case, according to the Idaho State Police officer's affidavit of probable cause, he initially stopped George for driving her vehicle at a speed of 66 miles per hour in a 55 mile per hour zone. At that point, he could lawfully request George's driver's license, registration and proof of insurance so that he could identify the person with whom he was dealing. This was necessary for his protection and so that he could accurately prepare the reports required for this incident. The fact that George would not cooperate with the officer constituted delaying and obstructing an officer in carrying out one of the duties of his office pursuant to I.C. § 18–705. We thus affirm the magistrate's conviction of George on the charge of delaying and obstructing an officer.

## IV.

## CONCLUSION

We hold that under Idaho law, a traffic infraction is a violation of law which is criminal in nature. Pursuant to Pub.L. 280 and I.C. § 67–5101G, the state has jurisdiction over tribal members for infractions occurring on state maintained highways located within the boundaries of an Indian reservation. Thus, the state has jurisdiction over George with respect to the traffic infractions committed by her on Highway 91 on February 15, 1993, and April 11, 1993. We also hold that if the initial stop is valid, as it was in this case, the officer has the right to identify the driver of the vehicle by requesting a driver's license, registration and proof of insurance.

Accordingly, we vacate the magistrate's dismissal of the infractions for lack of subject matter jurisdiction and remand for further proceedings, and we affirm the magistrate's conviction of George for delaying and obstructing an officer for her refusal to produce the requested documents.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.