STATE OF CONNECTICUT *v.* PAUL ALOI
(SC 17350)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued March 9, 2006—officially released January 2, 2007

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba, Jr.*, assistant state's attorney, for the appellant (state).

*Glenn T. Terk*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (defendant).

*Opinion*

PALMER, J. Following a bench trial, the trial court found the defendant, Paul Aloi, guilty of interfering with

a police officer in violation of General Statutes (Rev. to 2001) § 53a-167a, as amended by Public Acts 2001, No. 01-84, § 11 (P.A. 01-84),[1] criminal trespass in the second degree in violation of General Statutes § 53a-108 and criminal mischief in the third degree in violation of General Statutes § 53a-117.[2] The court sentenced the defendant to a total effective term of imprisonment of ninety days, execution suspended, with two years of conditional discharge, and imposed a total of $2000 in fines. The defendant appealed to the Appellate Court, which concluded, inter alia, that the defendant's refusal to provide identification to a police officer who reasonably suspected that the defendant had been involved in criminal activity did not support the defendant's conviction of interfering with a police officer under § 53a-167a. *State v. Aloi*, 86 Conn. App. 363, 374, 861 A.2d 1180 (2004). Accordingly, the Appellate Court reversed the judgment of conviction pertaining to that count.[3] Id., 381. We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly construe and apply . . . § 53a-167a?" *State v. Aloi*, 273 Conn. 901, 867 A.2d 840 (2005). We answer the certified question in the negative and, therefore, reverse the judgment of the Appellate Court

---

[1] General Statutes (Rev. to 2001) § 53a-167a, as amended by P.A. 01-84, § 11, provides in relevant part: "(a) A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties. . . ."

All references in this opinion to § 53a-167a are to the revision of 2001, as amended by P.A. 01-84, § 11.

[2] The defendant was acquitted of two counts each of burglary in the third degree and criminal trespass in the first degree, and one count each of criminal mischief in the third degree, tampering with a motor vehicle, disorderly conduct and attempt to commit criminal mischief in the first degree.

[3] The Appellate Court affirmed the defendant's convictions of criminal trespass in the second degree and criminal mischief in the third degree. *State v. Aloi*, supra, 86 Conn. App. 381. Those convictions are not the subject of this appeal.

with respect to the defendant's conviction of interfering with a police officer.

The opinion of the Appellate Court contains the following facts that the trial court reasonably could have found. "Since 1985, the defendant has resided adjacent to Mill Woods Park, a public park in Wethersfield. Winding Brook Turf Farm (Winding Brook) is located on the opposite side of Mill Woods Park from the defendant's residence. Winding Brook has pumped water from a stream in Mill Woods Park for several years to irrigate its crops. The noise associated with the pumping activities has been a cause for contention between the defendant and Winding Brook for some time. In 2002, Winding Brook began using a fire truck, which was stationed in close proximity to the defendant's home, to pump water from Goff Brook at Mill Woods Park. During the summer of 2002, some Winding Brook employees discovered that the fire truck had been vandalized and contacted the Wethersfield police department. In response, the police installed a video surveillance camera to monitor the fire truck.

"On August 2, 2002, the defendant approached Winding Brook's fire truck and stood on its side platform. He subsequently opened the door to the cab of the fire truck, leaned inside and placed his hands on the dashboard as well as on the front seat. The exterior emergency lights on the fire truck flickered on and off while the passenger door was still open. The emergency lights remained on for approximately fifty minutes. Consequently, William D. Morgan, the owner of Winding Brook, filed a complaint against the defendant for trespassing. In response, a Wethersfield police officer told the defendant to stay off of the Winding Brook property and to stay away from the pumping equipment.

"On August 14, 2002, after the fire truck unexpectedly ceased operating, Richard Peruta, an employee of Wind-

ing Brook, approached the fire truck to inspect the equipment. He noticed that the defendant was standing nearby. The defendant stated to Peruta: 'Why don't you call the police, and I'll have you arrested for false arrest.' Peruta, consequently, contacted the Wethersfield police and complained that the defendant was trespassing. [Sergeant Robert LaBonte and Officers Jay Salvatore and Jenny Keys of the Wethersfield police department] arrived at Mill Woods Park in response to Peruta's complaint and found the defendant [with mud all over his shirt] standing on public property near the fire truck. . . . Salvatore approached and advised the defendant that Peruta had complained that the defendant was trespassing and possibly had damaged the fire truck.[4] Salvatore requested that the defendant produce identification. The defendant did not immediately hand over his identification. The defendant also stated that he did not need to produce identification, that he was on public property and that 'this isn't Russia. I'm not showing you any [identification] . . . .' "[5] *State* v. *Aloi*, supra, 86 Conn. App. 365–66. At the conclusion of the trial, the court found the defendant guilty of several charges, including interfering with a police officer in violation of § 53a-167a.

In explaining why the state had proven the elements of the offense of interfering with a police officer,[6] the trial court stated that the police "[were not] asking for

---

[4] LaBonte testified that the area around the fire truck pump was muddy and that the surrounding areas were dry. According to Peruta, the fire truck pump could be disengaged by a person crawling under the truck in the mud.

[5] The police ultimately did obtain identification from the defendant. Although the defendant testified that he voluntarily provided Salvatore with identification shortly after refusing to do so, other witnesses were unable to corroborate the defendant's testimony in that regard, and the trial court made no finding as to how or when the police had obtained the defendant's identification.

[6] The trial court explained its reasons for finding the defendant guilty of interfering with a police officer during the sentencing proceeding.

identification just to ask for identification" but, rather, were acting within the scope of their duties in investigating the defendant's alleged trespass. The court further stated that, "although [the defendant] may not have known what in particular the police were interested in" when Salvatore asked him for identification, in view of the "past history" of police involvement in the dispute between the defendant and Winding Brook, the defendant "had every reason to know" that the police were investigating that matter.

On appeal to the Appellate Court, the defendant claimed that the evidence was insufficient to establish a violation of § 53a-167a because his comment and refusal to provide identification immediately did not hinder Salvatore in the performance of his duties.[7] *State v. Aloi*, supra, 86 Conn. App. 368. The defendant also claimed that the state had failed to establish that he had the requisite intent to interfere with Salvatore in the performance of his duties.[8] Id., 367 n.2. In response, the state maintained that "§ 53a-167a proscribes verbal as well as nonverbal conduct that is intended to interfere with a police officer in the performance of his or her duties"; id., 369; and, further, that a refusal to comply with a legitimate police request is equivalent to

[7] The Appellate Court noted that the defendant had not claimed that his conviction for interfering with an officer implicated his free speech rights under the first amendment to the United States constitution. *State v. Aloi*, supra, 86 Conn. App. 368 n.3.

[8] On appeal to the Appellate Court, the defendant also contended that: (1) the evidence was insufficient to support his conviction of criminal mischief in the third degree; (2) in convicting him of criminal trespass in the second degree as a lesser offense included within burglary in the third degree, the trial court violated his due process right to fair notice and his right to present a statute of limitations defense; and (3) the charges of criminal mischief in the third degree and interfering with an officer were barred by the statute of limitations. *State v. Aloi*, supra, 86 Conn. App. 365. The Appellate Court rejected the first of these claims; id., 376; and declined to review the latter two claims. Id., 379, 380. None of the foregoing claims, however, is the subject of this appeal.

interfering with an officer. See id. The state also maintained that the evidence was sufficient to establish that the defendant was guilty of interfering with an officer in violation of § 53a-167a.

The Appellate Court agreed with the defendant that his refusal to produce identification did not constitute a violation of § 53a-167a. Id., 374. In support of its conclusion, the Appellate Court relied on General Statutes § 14-217,[9] which expressly requires that a motor vehicle operator provide identification to the police on demand. Id., 370. The Appellate Court reasoned that, if the legislature had intended a refusal to provide identification to come within the purview of the conduct proscribed under § 53a-167a, the legislature would have said so explicitly, as it did under § 14-217. Id. The Appellate Court also concluded that mere declaratory words ordinarily cannot constitute interference for purposes of § 53a-167a unless those words "exhort or incite others in their dealings with [the] officer" or unless the words

[9] General Statutes § 14-217 provides: "No person who is operating or in charge of any motor vehicle, when requested by any officer in uniform, by an agent authorized by the commissioner who presents appropriate credentials or, in the event of any accident in which the car he is operating or in charge of is concerned, when requested by any other person, may refuse to give his name and address or the name and address of the owner of the motor vehicle or give a false name or address, or refuse, on demand of such officer, agent or other person, to produce his motor vehicle registration certificate, operator's license and any automobile insurance identification card for the vehicle issued pursuant to section 38a-364 or to permit such officer, agent or such other person to take the operator's license, registration certificate and any such insurance identification card in hand for the purpose of examination, or refuse, on demand of such officer, agent or such other person, to sign his name in the presence of such officer, agent or such other person. No person may refuse to surrender his license to operate motor vehicles or the certificate of registration of any motor vehicle operated or owned by him or such insurance identification card or the number plates furnished by the commissioner for such motor vehicle on demand of the commissioner or fail to produce his license when requested by a court. Violation of any provision of this section shall be an infraction."

represent "a threat of violence to the officer."[10] Id., 374;
cf. *State* v. *Williams*, 205 Conn. 456, 473, 534 A.2d 230
(1987) ("we construe § 53a-167a to proscribe only physi-
cal conduct and fighting words that by their very utter-
ance inflict injury or tend to incite an immediate breach
of the peace" [internal quotation marks omitted]). In
light of its determination that the evidence was insuffi-
cient to establish that the defendant had hindered Salva-
tore in the performance of his duties, the Appellate
Court did not address the defendant's claim that the
state had failed to prove that the defendant intended
to interfere with Salvatore. *State* v. *Aloi*, supra, 86 Conn.
App. 367 n.2.

On appeal to this court, the state maintains that the
evidence adduced at trial was sufficient to warrant a
finding of guilty with respect to the charge of interfering
with an officer under § 53a-167a. Specifically, the state
first contends that, under the doctrine of *Terry* v. *Ohio*,
392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and
its progeny, Salvatore was justified in approaching the
defendant and questioning him because Salvatore rea-
sonably suspected that criminal activity had occurred
and that the defendant was involved in it. The state
further contends that when, as in the present case, a
police officer makes a legitimate investigatory stop
under *Terry*, the person subject to the *Terry* stop must
honor the officer's reasonable demand for identifica-
tion. Finally, the state maintains that the defendant's
refusal to identify himself to Salvatore promptly pro-
vided a sufficient factual basis for the defendant's con-
viction under § 53a-167a. The defendant contends that
his peaceable refusal to provide identification does not
constitute a violation of § 53a-167a and that, in any

[10] The Appellate Court did suggest, however, that, under certain circum-
stances, lying to or intentionally misleading a police officer could constitute
an obstruction or hindrance sufficient to constitute a violation of § 53a-
167a. *State* v. *Aloi*, supra, 86 Conn. App. 373.

event, the evidence adduced in the present case was insufficient to establish either that he had hindered Salvatore in the performance of his duties or that he had intended to do so.[11] We agree with the state.

I

We first must determine whether a person lawfully may be convicted of interfering with a police officer under § 53a-167a for refusing to provide identification to that police officer who is investigating possible criminal activity pursuant to a *Terry* stop. The resolution of that question ultimately gives rise to an issue of statutory construction over which our review is plenary. E.g., *State* v. *Ramos*, 271 Conn. 785, 791, 860 A.2d 249 (2004). Our review of § 53a-167a is guided by well established principles, the fundamental objective of which is to ascertain the intent of the legislature. E.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 135, 827 A.2d 659 (2003). As in all cases of statutory construction, we begin with the statutory language itself.[12]

As the Appellate Court has observed, § 53a-167a "defines interfering to *include* obstruction, resistance, hindrance or endangerment."[13] (Emphasis in original.)

---

[11] We note that the defendant does not claim either that Salvatore lacked authority under *Terry* to request identification from the defendant or that the federal or state constitution bars his prosecution for refusing to provide such identification. Rather, the defendant's sole claim is that a refusal to provide such identification cannot be the basis for a conviction under § 53a-167a.

[12] Under General Statutes § 1-2z, the meaning of a statute is to be determined initially from the text of the statute itself and its relationship to other statutes. If, upon review of those provisions, the meaning of the statutory text is plain and unambiguous and does not yield absurd or bizarre results, extratextual evidence of the statute's meaning shall not be considered. Neither party persuasively contends that § 53a-167a is plain and unambiguous as applied to the facts of this case.

[13] "[T]he four means of interfering listed in [§ 53a-167a] are not conceptually distinct, and do not constitute disjunctive methods by which interfering with an officer can be committed." *State* v. *Laws*, 37 Conn. App. 276, 297, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). Rather,

*State* v. *Hampton*, 66 Conn. App. 357, 375, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). "Those words . . . have a broad scope. By using those words it is apparent that the legislature intended to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . The [defendant's] act, however, does not have to be wholly or partially successful . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute." (Emphasis added; internal quotation marks omitted.) *State* v. *Beckenbach*, 1 Conn. App. 669, 679, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985); see also *State* v. *Williams*, supra, 205 Conn. 471 (§ 53a-167a proscribes "conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties"); *State* v. *Laws*, 37 Conn. App. 276, 297, 655 A.2d 1131 (same), cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). Thus, "[t]he broad intent of § 53a-167a is to prohibit conduct that hampers the activities of the police in the performance of their duties . . . ." *State* v. *Hampton*, supra, 375–76.

Because a refusal to provide identification in connection with a *Terry* stop may hamper or impede a police investigation into apparent criminal activity, we see no reason why such conduct would be categorically excluded under the expansive language of § 53a-167a.[14]

they are "merely descriptive of possible ways that a single crime might be committed." Id., 298.

[14] The state does not claim that the defendant's statement, "this isn't Russia. I'm not showing you any [identification]," was sufficient, separate and apart from the defendant's conduct, to support the defendant's conviction of interfering with an officer. In other words, the state relies on the defendant's *conduct* in refusing to provide Salvatore with identification,

Indeed, the state expressly alleged in the information that the defendant had "hinder[ed]" the police in the performance of their duties. "To 'hinder' is defined as 'to make slow or difficult the course or progress of.'" *State* v. *Biller*, 5 Conn. App. 616, 621, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986), quoting Webster's Third New International Dictionary. Although each case must be decided on its own particular facts, as a general matter, a suspect's refusal to comply with a lawful police command to provide identification following a *Terry* stop is likely to impede or delay the progress of the police investigation, even when that refusal is peaceable. See *Marrs* v. *Tuckey*, 362 F. Sup. 2d 927, 946 (E.D. Mich. 2005) (refusal to comply with police officer's request to identify oneself "surely hinders [that] police officer's legitimate efforts to carry out his lawful duties"). Thus, a refusal to comply with a police command to provide identification in the course of a *Terry* stop may constitute a violation of § 53a-167a even if that refusal is unaccompanied by any physical force or other affirmative act; § 53a-167a broadly proscribes conduct that hinders, obstructs or impedes a police officer in the performance of his or her duties irrespective of whether the offending conduct is active or passive. Cf. *State* v. *Simmons*, 86 Conn. App. 381, 388, 861 A.2d 537 (2004) (refusal to calm down and permit officer to perform patdown search accompanied by use of abusive language was sufficient to establish violation of § 53a-167a), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005). We therefore reject the defendant's categorical contention that a refusal to comply with a lawful police

and not on the defendant's *speech*, to support the defendant's conviction. Moreover, as the state notes, there is nothing in the record to indicate that the defendant's conviction was predicated solely on the defendant's speech as distinguished from his conduct.

request for identification necessarily falls outside the purview of § 53a-167a.[15]

Notwithstanding the broad scope of § 53a-167a, the Appellate Court concluded that, because § 14-217[16] expressly provides that motorists must produce identification upon request in a variety of different circumstances, including upon the request of a uniformed or properly credentialed officer, the legislature would have used similar language if it had intended to incorporate such a requirement into § 53a-167a. *State* v. *Aloi,* supra, 86 Conn. App. 370–71; see, e.g., *Asylum Hill Problem Solving Revitalization Assn.* v. *King,* 277 Conn. 238, 256–57, 890 A.2d 522 (2006) ("[When] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to

[15] We note that a number of courts construing statutes similar to § 53a-167a have concluded that a refusal to provide identification to a police officer may constitute a violation of the statutory proscription against hindering or obstructing a police officer. See, e.g., *Bailey* v. *State,* 190 Ga. App. 683, 683–84, 379 S.E.2d 816 (1989); *State* v. *George,* 127 Idaho 693, 699, 905 P.2d 626 (1995); *East Brunswick* v. *Malfitano,* 108 N.J. Super. 244, 246–47, 260 A.2d 862 (App. Div. 1970); cf. *State* v. *Srnsky,* 213 W. Va. 412, 421, 582 S.E.2d 859 (2003) ("[A] refusal to identify oneself to a law enforcement officer does not, standing alone, form the basis for a charge of obstructing a law enforcement officer in performing official duties. However, the charge of obstructing an officer may be substantiated when a citizen does not supply identification . . . when the refusal occurs after a law enforcement officer has communicated the reason why the citizen's name is being sought in relation to the officer's official duties."). But see *Middletown* v. *Hollon,* 156 Ohio App. 3d 565, 570, 571, 807 N.E.2d 945 (2004) (refusal to provide identification to police officer falls outside city ordinance prohibiting "any act that hampers or impedes a public official in the performance of the public official's lawful duties" because refusal to provide identification "does not constitute affirmative action such as is contemplated by the . . . ordinance" [internal quotation marks omitted]).

[16] See footnote 9 of this opinion.

know all the existing statutes and the effect that its action or non-action will have upon any one of them." [Internal quotation marks omitted.]). We disagree with the reasoning of the Appellate Court. First, we are not persuaded that § 53a-167a and § 14-217 bear a sufficiently close relationship to warrant the conclusion that the legislature necessarily would have used similar language in both § 53a-167a and § 14-217 if it had intended for § 53a-167a to apply to a refusal to provide identification. In particular, the scope and purpose of the two provisions are different. Section 53a-167a is a criminal statute that broadly prohibits any conduct intended to impede an officer in the performance of his or her duties, whereas § 14-217 is a regulatory provision that applies only to motorists, who, upon request, are required to provide an array of identifying information to the police and, in the event of an accident, to any other person.[17] Thus, § 53a-167a, a class A misdemeanor punishable by up to one year imprisonment, is contained in our Penal Code, where it is classified as an "[Offense] Against the Administration of Justice . . . ." By contrast, § 14-217, which is punishable as an infraction, is a motor vehicle statute codified in the chapter of the General Statutes pertaining to "Vehicle Highway Use." Because the two statutory provisions address appreciably different concerns in significantly different ways, we do not believe that the two statutes properly may be characterized as relating to the same subject matter for purposes of triggering the rule of pari materia.[18] See, e.g., *Connecticut Light & Power Co.* v. *Costle,*

---

[17] Under § 14-217, the operator of a motor vehicle must provide the police and, in the event of an accident, any other person with: (1) his or her name and address; (2) if he or she is not the owner of the vehicle, the owner's name and address; (3) his or her operator's license; (4) the motor vehicle registration; and (5) any automobile insurance identification card.

[18] In support of its conclusion that § 53a-167a does not cover a refusal to provide identification to a police officer, the Appellate Court suggested that, because a violation of § 14-217 is an infraction whereas a violation of § 53a-167a is a misdemeanor, it would have created a conflict between the two provisions if it had "graft[ed] onto [§ 53a-167a] a requirement that a suspect

179 Conn. 415, 422, 426 A.2d 1324 (1980) (for purposes of rule of pari materia, only statutory provisions relating to same subject matter may be considered for guidance).

Furthermore, the broad language of § 53a-167a reflects a recognition by the legislature that, because police officers are confronted daily with a wide array of diverse and challenging scenarios, it would be impractical, if not impossible, to craft a statute that describes with precision exactly what obstructive conduct is proscribed. In other words, § 53a-167a necessarily was drafted expansively to encompass a wide range of conduct that may be deemed to impede or hinder a police officer in the discharge of his or her official duties. Because § 53a-167a reflects the intent of the legislature to establish a broad proscription against conduct that intrudes upon the ability of a police officer to perform his or her duties, we are unwilling to conclude that the legislature did not intend for § 53a-167a to cover a refusal to provide identification—regardless of the extent to which such a refusal actually may hinder or obstruct the police in any particular set of circumstances—merely because § 53a-167a does not expressly refer to that conduct.

Finally, as the United States Supreme Court recently has noted in upholding the constitutionality of a so-

must stop and identify himself to a police officer in response to an officer's demand." *State* v. *Aloi,* supra, 86 Conn. App. 371. We do not perceive any such conflict because, as we have explained, the scope and purpose of the two statutes are materially different: § 53a-167a broadly prohibits any conduct that obstructs or hinders a police officer in the performance of his or her duties, including, potentially, a refusal to provide identification, whereas § 14-217 proscribes a refusal to produce identification and documentation in the more limited context of a motor vehicle infraction or accident.

called "stop and identify" statute,[19] "[a]sking questions is an essential part of police investigations. . . . Beginning with *Terry* v. *Ohio*, [supra] 392 U.S. 1 . . . the [c]ourt has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further. . . .

"[The court's] decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops. See *United States* v. *Hensley,* 469 U.S. 221, 229 [105 S. Ct. 675, 83 L. Ed. 2d 604] (1985) ('[t]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice'); *Hayes* v. *Florida,* 470 U.S. 811, 816 [105 S. Ct. 1643, 84 L. Ed. 2d 705] (1985) ('[i]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information'); *Adams* v. *Williams,* 407 U.S. 143, 146 [92 S. Ct. 1921, 32 L. Ed. 2d 612] (1972) ('[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time').

"Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence

---

[19] So-called "stop and identify" statutes "vary from [s]tate to [s]tate, but all permit an officer to ask or require a suspect to disclose his identity." *Hiibel* v. *Sixth Judicial District Court of Nevada,* 542 U.S. 177, 183, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004).

or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere." (Citations omitted.) *Hiibel* v. *Sixth Judicial District Court of Nevada*, 542 U.S. 177, 185–86, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). Thus, "[t]he principles of *Terry* permit a [s]tate to require a suspect to disclose his name in the course of a *Terry* stop . . . [because] [t]he request for identity has an immediate relation to the purpose, rationale, and practical demands of a *Terry* stop."[20] (Citation omitted.) Id., 187–88.

---

[20] In *Hiibel*, the defendant, Larry Dudley Hiibel, "was charged with 'willfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge any legal duty of his office' in violation of [a Nevada statute]." *Hiibel* v. *Sixth Judicial District Court of Nevada*, supra, 542 U.S. 181, quoting Nev. Rev. Stat. § 199.280 (2003). The charges stemmed from Hiibel's refusal to provide identification to a deputy sheriff who reasonably suspected that Hiibel had assaulted a female companion with whom Hiibel was traveling. *Hiibel* v. *Sixth Judicial District Court of Nevada*, supra, 180–81. The Nevada authorities reasoned that Hiibel had obstructed the deputy sheriff in carrying out his duties under Nevada's "stop and identify" statute; id., 181; which provides in relevant part: "1. Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime. . . . 3. The officer may detain the person pursuant to this section only to ascertain his identity and the suspicious circumstances surrounding his presence abroad. Any person so detained shall identify himself, but may not be compelled to answer any other inquiry of any peace officer." Nev. Rev. Stat. § 171.123 (2005). After a trial, Hiibel was convicted as charged, and his conviction was affirmed on appeal by the state intermediate appellate court and the Supreme Court of Nevada. *Hiibel* v. *Sixth Judicial District Court of Nevada*, supra, 182. On appeal to the United States Supreme Court, Hiibel claimed that his conviction violated the fourth, fifth and fourteenth amendments to the United States constitution. See id., 180. In particular, Hiibel maintained that Nevada's "stop and identify" statute was inconsistent with the fourth amendment prohibition against unreasonable searches and seizures and the fifth amendment prohibition against compelled self-incrimination. Id., 185, 189. The United States Supreme Court rejected both of Hiibel's claims, concluding that a state does not violate either the fourth or fifth amendment by requiring the subject of a legitimate *Terry* stop to provide identification to the investigating officer. Id., 189, 190–91.

The fact that important government interests are served by obtaining a suspect's identity during the course of a *Terry* stop provides additional reason to reject the narrow construction of § 53a-167a advanced by the defendant and adopted by the Appellate Court because, as the court underscored in *Hiibel*, "[t]he threat of a criminal sanction helps ensure that the request for identity [in connection with a *Terry* stop] does not become a legal nullity."[21] Id., 188. In light of those important interests, and in the absence of any overriding countervailing considerations, we are unwilling to construe § 53a-167a as categorically excluding from its purview a refusal to provide identification to a police officer who has sought such identification pursuant to a valid *Terry* stop.

In the present case, Salvatore reasonably suspected that the defendant had committed a criminal trespass, the crime that Salvatore was investigating when he approached the defendant and asked him for identification. Furthermore, Salvatore's request for identification was undertaken in accordance with *Terry*, and, therefore, Salvatore was authorized to stop the defendant briefly and ascertain his identity. Finally, the defendant

---

[21] Although Hiibel was prosecuted under Nev. Rev. Stat. § 199.280, a statute very similar to § 53a-167a, the primary source of the obligation to provide identification was found in Nev. Rev. Stat. § 171.123, Nevada's "stop and identify" statute. See *Hiibel* v. *Sixth Judicial District Court of Nevada*, supra, 542 U.S. 181–82. In the present case, the source of that obligation is not a "stop and identify" statute but, rather, § 53a-167a itself. Of course, the obligation to provide identification exists under § 53a-167a if, and only if, the state can establish that the suspect's refusal to provide identification hindered or impeded the police in the performance of their duties. We note, finally, that the defendant does not claim that § 53a-167a is unconstitutionally vague as applied to his conduct because he did not have fair notice that his refusal to provide identification was prohibited by § 53a-167a. See *Risbridger* v. *Connelly*, 275 F.3d 565, 574 (6th Cir. 2002) ("a reasonable person would understand that if he refuses an officer's request for identification after being pointed out to that officer by another citizen, his conduct may 'hinder or obstruct' the officer in the discharge of his duties").

knew why Salvatore had asked him for identification; the defendant had encouraged the complaining witness, Peruta, to call the police, and, when the police arrived, Salvatore explained to the defendant that he was responding to that complaint. Under the particular circumstances presented, therefore, the defendant cannot prevail on his claim that his conduct in refusing to provide identification does not, as a matter of law,[22] constitute a violation of § 53a-167a.[23]

## II

Having concluded that the defendant's refusal to comply with Salvatore's request for identification is not categorically excluded from the purview of § 53a-167a, we next must determine whether, in light of the particular facts adduced, the evidence was sufficient to support the defendant's conviction on that charge. In support of his claim of evidentiary insufficiency, the defendant contends, first, that the state failed to demonstrate that his refusal to provide identification to Salvatore hindered the police in their investigation of the alleged criminal trespass and, second, that the evidence

[22] Our holding today is limited to a determination that a refusal to provide identifying information to a police officer in connection with a legitimate *Terry* stop may be sufficient to constitute a violation of § 53a-167a. Although a refusal to comply with certain other types of lawful police commands or orders may provide a basis for a prosecution under § 53a-167a; see, e.g., *State* v. *Simmons*, supra, 86 Conn. App. 388 (refusal to calm down and permit officer to perform patdown search, along with use of abusive language, constituted violation of § 53a-167a); for purposes of this opinion, we need not consider any factual scenario other than the scenario presented by the lawful *Terry* stop in the present case.

[23] The defendant contends that the rule of lenity requires a different conclusion. We disagree. We acknowledge that penal statutes must be construed strictly against the state. E.g., *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002). We are not persuaded, however, that a strict construction of the language of § 53a-167a leads to the interpretation that the defendant urges because, as we have explained, there is nothing in that language to suggest that a refusal to provide identification never can constitute a violation of § 53a-167a.

adduced by the state was inadequate to establish that the defendant intended to interfere with the police. Before considering the merits of the defendant's claims, we first set forth the well established principles that govern our review.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in

part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 79–81, 905 A.2d 1101 (2006). With these principles in mind, we now turn to the defendant's claims.

A

Contrary to the defendant's contention, the evidence supports the trial court's finding that the defendant's refusal to identify himself to the police hindered the police in their investigation of his alleged trespass. First, the police needed to ascertain the defendant's identity because they had been informed by Peruta that a person by the name of Paul Aloi had committed a trespass. Upon arriving at the scene, the police observed two individuals, one of whom turned out to be the defendant, standing in the vicinity where Peruta claimed that the trespass had taken place. Because Peruta had identified the alleged trespasser by name, obtaining the identity of those individuals was a logical and necessary step in the police investigation of the complaint. Although the police eventually ascertained the identity of the defendant, his refusal to comply with Salvatore's request for identification delayed the progress of the police investigation. That delay need not have been substantial to have constituted a hindrance for purposes of § 53a-167a; rather, the delay need only have impeded

the police to some appreciable degree. Viewing the evidence in the light most favorable to the state, we cannot say that the trial court was required to find that the delay was insufficient to hinder the police in their investigation of Peruta's complaint.[24]

The defendant nevertheless contends that his refusal to identify himself to Salvatore did not interfere with the investigation because one of the officers who had arrived at the scene in response to Peruta's complaint, namely, LaBonte, was familiar with the defendant.[25] We reject the defendant's contention for several reasons. First, the evidence indicated that LaBonte himself had instructed Salvatore to identify the two individuals— one of whom was the defendant—who were at the scene when the officers arrived there. In light of that evidence, it is reasonable to presume that LaBonte did not recognize the defendant. Moreover, the defendant himself testified that he did not know either LaBonte or Salvatore prior to August 14, 2002, the day on which the police responded to Peruta's complaint about the defendant's alleged trespass. Finally, during closing arguments, defense counsel asserted that LaBonte did not learn of the defendant's identity until it eventually became known that day. Therefore, we are not persuaded that LaBonte's purported familiarity with the defendant obviated any need for Salvatore to seek his identification.

---

[24] The defendant claims that any delay in the police investigation that may have been caused by his refusal to produce identification was de minimis because he did provide identification immediately after refusing to do so. As we have explained, however; see footnote 5 of this opinion; although the defendant testified to that effect, other witnesses could not corroborate his testimony, and the trial court made no finding as to how or when the police obtained the defendant's identification. In such circumstances, we cannot presume that the evidence established that the delay was, in fact, de minimis, as the defendant claims.

[25] Apparently, LaBonte previously had been dispatched to the defendant's residence in connection with a related complaint.

## B

The defendant further asserts that the evidence adduced by the state was insufficient to prove that the defendant intended to interfere[26] with the police.[27] This claim also lacks merit. The evidence established that, prior to refusing Salvatore's request for identification, the defendant knew that he was the subject of the police investigation because Peruta, who had accused the defendant of trespassing, had told the defendant that he was going to call the police. Indeed, as we have explained, the defendant himself suggested that Peruta contact the police. Moreover, the police explained to the defendant why they were there before asking him for identification. Thus, the defendant knew that the police needed to ascertain his identity in connection with their investigation of Peruta's complaint. The trial court, therefore, reasonably found that the defendant's failure to identify himself to Salvatore reflected an intent by the defendant to hinder, delay or impede the police in their efforts to determine whether a trespass had occurred and, if so, whether the defendant was the person who had committed the trespass.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of conviction with respect to the charge of interfering with an officer; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

---

[26] Although § 53a-167a contains no express intent requirement, we previously have concluded that it encompasses only interference that is intentional. *State* v. *Williams*, supra, 205 Conn. 474; see also *State* v. *Porter*, 76 Conn. App. 477, 492, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003).

[27] The defendant requests, in the event we reach this claim, that we remand the case to the Appellate Court so that that court may consider it. Considerations of judicial economy counsel that we address and resolve the claim.