# STATE OF CONNECTICUT *v.* EDWARD WEARING
## (AC 27018)

Flynn, C. J., and Lavine and Foti, Js.

Argued September 18—officially released November 7, 2006

*David A. Leff*, for the appellant (defendant).

*Timothy F. Costello*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian J. Leslie*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Edward Wearing, appeals from the judgment of the trial court, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant raises several claims, all premised on his contention that probable cause to make the arrest is an element of the crime. The defendant argues that because the state failed to prove that the police officer who arrested him had probable cause to do so, there was insufficient evidence by which the jury could find him guilty. Because probable cause to arrest is *not* an element of the crime of interfering with a police officer, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 9, 2004, the defendant; his mother, Estelle Barfield; his sister, Metasha Wearing; and other members of the family were present at a home on Sherman Avenue in New Haven, which the defendant and his father had just purchased. The defendant and his sister had a volatile argument. The defendant first, and then his sister, telephoned for police assistance. The defendant wanted the police to remove his sister and her motor vehicle from the premises. David Runlett and Victor Fuentes, New Haven police officers, responded to the calls that were classified by the dispatcher as a domestic dispute. Runlett and Fuentes were dressed in uniform when they arrived in separate marked police vehicles. Because Runlett arrived first, he conducted the investigation.

When Runlett arrived, the defendant was standing on the porch in front of the residence. The defendant appeared to be agitated and upset when Runlett briefly spoke to him. Runlett therefore went into the house to interview the defendant's mother and sister. The interviews lasted approximately ten minutes. On the basis of the interviews and his training and experience, Runlett determined that the defendant should be arrested.

While Runlett was conducting the interviews, Fuentes spoke to the defendant. The defendant spoke in a boisterous manner and used profanity. Fuentes detected the odor of alcohol on the defendant's breath. The defendant's aunt came outside and tried to calm him. By the time Runlett had completed the interviews, the defendant was standing in the front yard near Fuentes. Runlett indicated to Fuentes by crossing his arms and nodding toward the defendant that he was going to arrest the defendant. Runlett approached the defendant from behind and told him that he was under arrest. Runlett asked the defendant if he had anything dangerous in his pockets. The officers patted down the defendant. Runlett then placed a handcuff on the defendant's left wrist. The defendant became rigid and stiffened his right arm when Runlett attempted to place the handcuff on that arm. The defendant ignored the officer's command to put his right arm behind his back. The defendant is taller than six feet, and Runlett is five feet, seven inches tall. Due to the differences in their size, Runlett was unable, even with Fuentes' assistance, to handcuff the defendant's right arm. For the safety of the defendant and themselves and in accordance with department policy, the officers attempted to put the defendant in a prone position. A further struggle ensued, and the defendant put Runlett in a head lock. The two officers and the defendant continued to struggle until Runlett was able to spray the defendant with pepper spray. The

officers then placed the defendant on the ground and secured the handcuff on the defendant's right arm. The defendant was arrested and charged with four crimes: threatening in the second degree in violation of General Statutes § 53a-62, disorderly conduct in violation of General Statutes § 53a-182, assault on a public safety officer in violation of General Statutes § 53a-167c and interfering with an officer in violation of § 53a-167a.

The state amended the information before trial, dropping the threatening and disorderly conduct charges, and charging the defendant only with assault of a peace officer and interfering with an officer. During trial, the state did not present evidence as to why Runlett decided to arrest the defendant. At the charging conference, the defendant asked the court to instruct the jury that a police officer must have probable cause to make a warrantless arrest. The court did not include that instruction in its charge. After the court instructed the jury,[1]

[1] The court instructed the jury with respect to interfering with an officer as follows: "For you to find the defendant guilty of [interfering with an officer], the state must prove the following elements beyond a reasonable doubt. One, that the defendant obstructed, resisted, hindered or endangered a peace officer. Two, that the conduct of the defendant occurred while the peace officer was . . . in the performance of such peace officer's duties . . . . And three, that the defendant intended to obstruct, resist, hinder or endanger a peace officer. . . .

"[A] peace officer means a member of an organized local police department. . . . If you find that . . . Runlett was a peace officer, you will consider the elements of the crime, the other elements. . . .

"[T]he state must have proved that the conduct of the defendant occurred while the peace officer was . . . in the performance of such peace officer's duties . . . . The phrase, in the performance of his duties, means that the police officer is simply acting within the scope of what he is employed to do. . . .

"The phrase, in the performance of his official duties, means that Runlett must have been acting within the scope of what he is employed to do. A police officer has the duty to enforce the laws and to preserve the peace. Whether he is acting in the performance of his duty must be determined under a good faith belief that he is carrying out that duty and his actions are reasonably designed to that end . . . .

"The phrase, in the performance of his official duties, means that the police officer is simply acting within the scope of what he is employed to

counsel for the defendant asked the court to clarify its charge by adding that "if you find that there is no fact upon which the officer could have . . . concluded there was probable cause, then you must acquit . . . ." The court denied the request.

The defendant filed a motion for a judgment of acquittal, arguing that the state had failed to offer into evidence the specific facts on which the jury could conclude that Runlett had probable cause to believe that the defendant had committed a crime on October 9, 2004. The court reserved judgment on the motion for a judgment of acquittal. After the jury found the defendant not guilty of assault of a peace officer but guilty of interfering with an officer, the defendant renewed his motion for a judgment of acquittal. The court denied the motion. The defendant thereafter filed a motion for reconsideration and for articulation with respect to the motion for a judgment of acquittal after the verdict. In his motion for reconsideration, the defendant relied on *State* v. *Gallagher*, 191 Conn. 433, 465 A.2d 323 (1983), overruled in part by *State* v. *Brocuglio*, 264 Conn. 778, 786, 826 A.2d 145 (2003), and *State* v. *Brocuglio*, 264 Conn. 778, 826 A.2d 145 (2003), in which our Supreme Court affirmed one's right to resist an unlawful entry into one's home. The trial court issued a memorandum of decision in which it denied the defendant's motion for reconsideration, concluding that the defendant had called for police assistance and that there was no evidence of an unlawful entry into the defendant's home because the defendant's mother had permitted Runlett to enter.[2]

On appeal, the defendant claims that (1) there was insufficient evidence to prove beyond a reasonable

do. The test is whether the police officer is acting within that compass or is engaging in a personal frolic of his own."

[2] The state presented evidence that the defendant's mother resided in the home.

doubt that he was guilty of interfering with an officer because the state failed to prove that the officers had probable cause to arrest him, (2) the court improperly failed to charge the jury on an element of the crime of interfering with an officer and (3) the court improperly denied the motion for a judgment of acquittal. Underlying each of the defendant's claims is his contention that to act within the scope of his or her duty, an officer must have probable cause to make an arrest.

The defendant's argument requires us to construe § 53a-167a, which presents a question of law to which the plenary standard of review applies. See *State* v. *Sanchez*, 75 Conn. App. 223, 232, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). On the basis of our plenary review, we conclude that § 53a-167a does not contain an element that a police officer have probable cause to make an arrest. Consequently, the state was not required to prove that Runlett had probable cause to arrest the defendant, and the court properly instructed the jury and denied the defendant's motion for a judgment of acquittal.

General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." The elements of the crime, therefore, are (1) a person obstructs, resists, hinders or endangers, (2) a peace officer, (3) while the officer is in the performance of his or her duties. "Section 53a-167a is broad in scope . . . and encompasses acts of physical resistance. . . . In enacting § 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. . . . The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose

violates the statute." (Internal quotation marks omitted.) *State* v. *Briggs*, 94 Conn. App. 722, 728, 894 A.2d 1008, cert. denied, 278 Conn. 912, 899 A.2d 39 (2006). Furthermore, General Statutes § 53a-23 provides that "[a] person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is *legal or illegal.*" (Emphasis added.)

The defendant's reliance on *State* v. *Brocuglio*, supra, 264 Conn. 793–94, and *State* v. *Gallagher*, supra, 191 Conn. 445, in which our Supreme Court held that § 53a-23 does not abrogate the common-law right to resist an unlawful entry into one's home, is misplaced. The court here found that there was no evidence of an illegal entry into the defendant's home. The defendant himself called for police assistance. When the police officers arrived, the defendant did not object to their presence or Runlett's entering the home to conduct an investigation. The officers clearly were acting in the performance of their duties. The defendant was standing outside the house when Runlett informed him that he was under arrest. The defendant then resisted the officer's efforts to arrest him and failed to obey Runlett's commands to cooperate.

The judgment is affirmed.

In this opinion the other judges concurred.