******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* ZYRON AMIR JORDAN
## (AC 47193)

Cradle, C. J., and Clark and Harper, Js.

*Syllabus*

The defendant appealed to this court from the trial court's judgments finding him in violation of probation in two criminal dockets and revoking his probation. The defendant, a passenger in a motor vehicle owned and driven by a friend, was arrested and charged with interfering with a police officer pursuant to statute (§ 53a-167a) for his conduct during a motor vehicle stop and for possession of narcotics with intent to sell and criminal possession of a firearm for items found in a backpack in the backseat of the vehicle. The court determined that the defendant constructively possessed the contraband in the backpack and had interfered with the lawful duties of a police officer, all of which constituted conduct that violated the conditions of the defendant's probation. The defendant claimed that there was insufficient evidence for the court to find that he had violated the conditions of his probation. *Held*:

The trial court's determination that the state had produced sufficient evidence that the defendant had violated § 53a-167a and, thus a condition of his probation, was not clearly erroneous, as the court's finding that the defendant's conduct in failing to comply with the police officers' commands and in resisting their efforts to place him in handcuffs had hampered the activities of the police in the performance of their duties was supported by the record evidence.

The trial court erred in determining that the defendant was in constructive possession of the illegal drugs or the firearm that were found in the vehicle, as there was nothing in the record to support the finding that the defendant exercised dominion and control over the contraband.

This court concluded that a remand for resentencing was appropriate in light of the trial court's statements at the outset of the dispositional phase of the probation revocation hearing that the defendant had previously been convicted for offenses involving the possession and sale of illegal drugs and that it had rejected the defendant's claim that he had not possessed the contraband in the backpack, as this court could not be confident that the trial court would not have exercised its discretion differently had it sentenced the defendant solely on the basis of a violation of probation for interfering with an officer, for which there was sufficient evidence in the record.

Argued March 20—officially released November 4, 2025

*Procedural History*

Informations charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, and tried to the court, *Klatt, J.*; judgments revoking the defendant's probation, from which he appealed to this court. *Reversed in part*; *further proceedings*.

*Judie Marshall*, assigned counsel, for the appellant (defendant).

*Lena A. Arnold*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc Ramia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Zyron Amir Jordan,[1] appeals from the judgments of the trial court finding him in violation of probation under General Statutes § 53a-32. On appeal, the defendant principally claims that there was insufficient evidence that he violated his probation. We disagree with this claim. However, because we conclude that one of the two grounds on which the court found the defendant in violation of his probation was not supported by sufficient evidence, and because we cannot be confident that this error did not impact the sentences it imposed, we set aside the defendant's sentences and remand the matter for resentencing.[2]

---

[1] We note that in certain documents in the court file, the defendant's first name is spelled "Zy'ron."

[2] The defendant also claims on appeal that the court abused its discretion in revoking his probation and ordering him to serve the full unexecuted portion of his sentence of eight years of incarceration. In light of our disposition, we do not reach the merits of this claim. See, e.g., *State* v. *Sykes*, 232 Conn. App. 753, 755 n.1, 337 A.3d 1174, cert. denied, 353 Conn. 906, A.3d (2025); *State* v. *Johnson*, 75 Conn. App. 643, 658, 817 A.2d 708 (2003).

The following facts, as found by the trial court, and procedural history are relevant to this appeal. On December 11, 2019, the defendant pleaded guilty to the sale of narcotic substances in violation of General Statutes § 21a-277 (a) (1) (A) in Docket No. U04W-CR-19-0458140-S. On February 7, 2020, the court sentenced the defendant in that docket to six years of incarceration, execution suspended after eighteen months, and four years of probation. On November 29, 2021, the defendant pleaded guilty to possession of narcotics with intent to sell in violation of § 21a-277 (a) (1) (A) in Docket No. U04W-CR-20-0492997-S. On March 1, 2022, the court sentenced the defendant in that docket to eight years of incarceration, execution suspended, and three years of probation. In addition to the standard conditions of probation, the court imposed special conditions of probation in each docket, including that the defendant not possess weapons or narcotics. These sentences ran concurrently.

On September 30, 2022, while on probation, the defendant was sitting as a passenger in a Monte Carlo motor vehicle that was parked facing the wrong direction on River Street in Waterbury. Police officers assigned to the Crime Prevention Unit (CPU) of the Waterbury Police Department observed this vehicle. Two marked police cars, each with three members of the police department all wearing standard police uniforms, parked at an angle to prevent the vehicle from leaving. One police car parked in front of the vehicle, and the other behind it. The police car in the front had activated its overhead emergency lights.

Khazirr Norwood, the driver of the vehicle, in an attempt to flee, drove the vehicle in reverse, striking the police car behind him, then went forward, hitting the police car with its lights on. Anthony Porzio, a police officer who had been sitting in the passenger seat of the police car positioned in front, then exited the police

car and approached the passenger door of the vehicle. Porzio ordered the defendant to exit the vehicle. The defendant did not comply and, after several requests and attempts to open the passenger door, Porzio broke the passenger front window and, with the assistance of another officer, removed the defendant from the interior of the vehicle. The defendant had not made any attempt to exit the vehicle or to comply with Porzio's commands. After he was removed from the interior of the vehicle, the defendant tensed and pulled his arms away from the officers, making it difficult for the officers to place him in handcuffs.

After officers removed Norwood from the vehicle, they conducted a search of its interior. In the center console between the driver and passenger seats, the officers observed empty plastic baggies and two "colorful pills," which they believed to be ecstasy.[3] The officers also discovered a backpack located in the floor area of the passenger side rear seat. This backpack contained fifty-six individually packaged plastic bags

---

[3] See, e.g., *State* v. *Peloso*, 109 Conn. App. 477, 483 and 483 n.9, 952 A.2d 825 (2008) (MDMA, also known as ecstasy, is controlled substance that is central nervous system stimulant that produces heightened sensitivity to sensory stimulation, hallucinations, altered perceptual sense, increased energy, euphoria and empathy); United States Drug Enforcement Administration, "Ecstasy or MDMA (also Known As Molly)," available at https://www.dea.gov/factsheets/ecstasy-or-mdma-also-known-molly (last visited October 24, 2025) (ecstasy acts as both stimulant and hallucinogen, providing energizing effect, distortions in time and perception, and enhanced enjoyment of tactile experiences).

Porzio testified that, on the basis of his training and experience, the two pills found in the center console were consistent with the appearance of ecstasy. He acknowledged that it was not confirmed by chemical testing that these pills were, in fact, ecstasy. We note that the trial court did not make a specific finding as to whether these two pills were, in fact, ecstasy. Instead, it concluded that the plastic baggies and two colorful pills found in the center console of the vehicle were consistent with evidence of the sale of or possession with intent to sell controlled substances. Additionally, the parties have not addressed in this appeal whether these pills were, in fact, a controlled substance.

of marijuana totaling 239 grams, and a nine millimeter firearm.

The defendant was arrested for, inter alia, interfering with a police officer, criminal possession of a firearm, possession of marijuana with intent to sell, and possession of a hallucinogenic substance.[4] He subsequently was charged, in two separate dockets, with violating his probation under § 53a-32. The arrest warrant applications alleged that the defendant violated the standard condition of probation to not violate any criminal law of the United States, this state, or any other state or territory, as well as the court-ordered special condition of probation prohibiting him from possessing weapons or narcotics. The trial court, *Klatt, J.*, conducted a revocation of probation hearing over the course of two days on October 4 and 5, 2023. The state presented evidence from a probation officer, Hiley Jackson, and four police officers of the Waterbury Police Department: Anthony Porzio, Wilfredo Gonzalez, David Shaban, and Michael Nicol. The defendant did not testify, but called Norwood and Norwood's mother, Sharnica Norwood, as witnesses.

In an oral decision, the court concluded that the state had met its burden of showing, by a preponderance of the evidence, that the defendant had violated the terms of his probation. Specifically, it found that the defendant constructively possessed the firearm and illegal drugs and that he interfered with the lawful duties of a police officer, all of which constituted conduct that would amount to violations of the conditions of his probation. During the dispositional phase, the court indicated that the defendant previously had been convicted of offenses related to the illegal sale of drugs. It further stated that the defendant had access to a firearm and

---

[4] These charges remain pending at this time. See *State* v. *Jordan*, Superior Court, judicial district of Waterbury, Docket No. CR-22-0501607-S.

illegal drugs and resisted the efforts of the police to place him under arrest. Ultimately, the court concluded that the defendant was not amenable to supervised probation, imposed the suspended portion of the sentences in both underlying criminal dockets, and ordered the defendant to serve a total period of eight years of incarceration.[5] This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that there was insufficient evidence that he violated the conditions of his probation. We disagree with this claim because, of the two grounds set forth by the trial court for finding the defendant in violation of his probation, one, we conclude, is supported by sufficient evidence. Specifically, we conclude that the state presented sufficient evidence for the court to find by a preponderance of the evidence that the defendant had interfered with a police officer in the performance of his lawful duties and, thus, violated General Statutes § 53a-167a. However, because the evidence does not support the court's conclusion that he constructively possessed the illegal drugs or firearm found in the vehicle, and because we cannot be confident that this improper determination did not impact the sentences imposed by the court, we set aside the defendant's sentences and remand the cases for resentencing.

The following principles guide our review of the defendant's claim. A probation revocation proceeding,

[5] The trial court imposed a sentence of three years of incarceration in Docket No. U04W-CR-19-0458140-S, to run concurrently with the imposed sentence of eight years of incarceration in Docket No. U04W-CR-20-0492997-S.

"In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Santos T.*, 146 Conn. App. 532, 535, 77 A.3d 931, cert. denied, 310 Conn. 965, 83 A.3d 345 (2013).

civil in nature, does not require all of the procedural components associated with a criminal proceeding.[6] *State* v. *Dunbar*, 233 Conn. App. 297, 310, 339 A.3d 642 (2025); *State* v. *Taveras*, 219 Conn. App. 252, 265–66, 295 A.3d 421, cert. denied, 348 Conn. 903, 301 A.3d 527 (2023). "[A]ll that is required in a probation violation proceeding is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." (Internal quotation marks omitted.) *State* v. *Sykes*, 232 Conn. App. 753, 769, 337 A.3d 1174, cert. denied, 353 Conn. 996,      A.3d      (2025).

Additionally, we note that "revocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing. . . .

"Because the present case concerns the evidentiary phase and the trial court's factual finding that the defendant violated his probation, we are guided by the standard of review applicable to that phase. . . . It is also

[6] We have explained that "[p]robation is, first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) *State* v. *Esquilin*, 179 Conn. App. 461, 469, 179 A.3d 238 (2018).

well settled that a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Accordingly, [a] challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Maurice M.*, 303 Conn. 18, 25–27, 31 A.3d 1063 (2011); see generally *State* v. *Orr*, 199 Conn. App. 427, 434, 237 A.3d 15 (2020) (primary purpose of probation proceeding is to determine whether defendant is complying with terms of probation, and appellate review distills to review of reasonableness of two findings, first, whether there was violation of probation condition and second, whether probation should be revoked because its rehabilitative purposes are no longer being served).

On appeal, the defendant argues that the evidence was insufficient to support the court's findings that he interfered with the police and was in constructive possession of the firearm or the illegal drugs located

in the vehicle. The state counters that, in viewing the totality of the evidence and reasonable inferences drawn therefrom, the trial court reasonably could have found, by a preponderance of the evidence, that he violated the terms of his probation. In order to resolve this claim, a detailed review of the evidence presented at the probation revocation hearing is required.

The state first called Jackson, the defendant's probation officer, as a witness. He testified that the conditions of probation were reviewed with the defendant for both of his criminal dockets. One of the standard conditions of probation is: "Do not violate any criminal law of the United States, this state or any other state or territory." Additionally, in Docket No. U04W-CR-19-0458140-S, the court ordered the following special conditions of probation: "1. Substance abuse evaluation/treatment; 2. Random Urines; 3. *Possess no weapons or narcotics*." (Emphasis added.) In Docket No. U04W-CR-20-0492997-S, the court ordered him to "abide by all and any court ordered conditions." The defendant signed both of the conditions of probation forms. Following the defendant's September 30, 2022 arrest and his review of the police report, Jackson determined that certain conditions of probation had been violated. Specifically, Jackson opined that the defendant had violated a criminal law and had possessed a weapon and narcotics. As a result, Jackson prepared an arrest warrant for the defendant.

Next, the state called Porzio as a witness. Porzio was working as a member of the CPU on September 30, 2022. Porzio testified that, at approximately 10 p.m. that night, he was patrolling in a marked police car. At this time, Sergeant Christopher Carpeniteri of the Waterbury Police Department was driving, Porzio was seated in the front passenger seat, and Gonzalez was in the backseat. While traveling northbound on River Street, the patrolling officers observed a blue Monte Carlo

parked in the southbound lane while facing north. On the basis of this observation, Carpeniteri moved to park in front of the vehicle and the police car's overhead emergency lights were activated to initiate a traffic stop. As Porzio exited the police car, Norwood drove in reverse and struck the other police car that had pulled in behind the vehicle.

Porzio testified that he shouted at Norwood and the defendant, ordering them to stop. He approached the vehicle and attempted to open the passenger side door, but it was locked. The vehicle drove forward, striking the police car from which Porzio had exited. Porzio commanded the occupants of the vehicle to exit and pulled on the passenger door handle. Porzio again shouted to Norwood and the defendant, who appeared "to be stationary, frozen." Unable to gain entry into the stopped vehicle, Porzio used his flashlight to break the passenger window. The defendant still did not comply with Porzio's continued commands to exit the vehicle. Porzio grabbed the defendant by the arm and escorted him out of the passenger seat.

Porzio further testified that, after the defendant was removed from the vehicle, he was placed in handcuffs by another police officer. Porzio then entered the passenger side of the vehicle and escorted Norwood from the driver's seat. Porzio stated that the defendant did not comply with his commands until he allowed the officers to place him in handcuffs. The defendant was placed under arrest for interfering with an officer based on his refusal to comply with Porzio's multiple commands.

Porzio indicated that he then conducted an inventory search of the vehicle prior to having it towed from the scene.[7] He located plastic bags containing "two colorful

[7] "An inventory search is a well-defined exception to the warrant requirement. . . . In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. . . . A standardized procedure for making a list or inventory as soon as

pills" inside the cup holder of the front center console. Additionally, he found a backpack in the rear seat behind the passenger seat of the vehicle that contained a firearm and plastic bags of what appeared to be marijuana. Subsequent testing indicated a presumptive positive result that the green leafy substance in the plastic bags inside the backpack was marijuana. Porzio had the pills, the plastic bags, the marijuana, and the firearm seized by the officer in charge of evidence collection.

At the outset of cross-examination, defense counsel played a video recording from Porzio's body camera in an attempt to demonstrate inconsistencies between Porzio's testimony and the video recording from his body camera.[8] The video, however, did not depict a

reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." (Internal quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 640, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007); see also *South Dakota* v. *Opperman*, 428 U.S. 364, 368–76, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

[8] The video recording from Porzio's body camera began with no sound and depicted Porzio sitting in the interior of a moving police car while holding a flashlight in his right hand. As the vehicle came to a stop and Porzio rapidly exited, the audio recording engaged. As Porzio rapidly walked behind the police car and approached the vehicle, he is heard issuing the following command: "Stop, stop." He unsuccessfully attempted to open the passenger door of the vehicle. Other voices are heard as the vehicle moved forward and struck the police car from which Porzio had exited. Porzio again approached the passenger door of the vehicle and appeared to order the occupants to get out. After another failed attempt to open the passenger door, Porzio smashed the passenger window. He and another officer then reached in and grabbed the defendant's right arm. The camera moved off of the defendant for a few seconds as the passenger door was opened and the defendant was taken out of the vehicle. Porzio then removed Norwood from the driver's seat, across the center console and out of the vehicle via the passenger door. Once outside, other officers placed Norwood in handcuffs.

The recording from the body camera worn by Porzio does not provide a view that captured every detail of the events during this dangerous and frenzied police stop, for a variety of reasons, including the rapid movement of Porzio and his close proximity to the police car and then to the vehicle. Cf. *Scott* v. *Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (where video recording captures events in question and clearly

clear view of the defendant as he was placed in handcuffs. Porzio then acknowledged that the vehicle was moving for only a few seconds. He also stated that, after attempting to open the door and instructing the defendant to exit, he smashed the passenger window. He disagreed with defense counsel's assertion that the defendant lacked sufficient time to comply with Porzio's commands. Porzio then clarified: "I believe [the defendant] had ample opportunity to open the door and comply with police throughout the stop." Porzio also testified that the defendant continued to pull his arm away after he had reached into the vehicle to restrain him. Specifically, he stated: "As I had positive control of [the defendant's] hands, he continued to pull as you can see in the video."

Shaban, a police sergeant, testified that, after the traffic stop had been initiated, he heard various officers shouting commands at Norwood and the defendant to open the door and to exit the vehicle. He also opined that the occupants of the vehicle had been provided with a reasonable time to comply with the orders before Porzio shattered the passenger side window with his flashlight.

Nicol testified that officers instructed the occupants of the vehicle to stop and to exit and afforded them a reasonable amount of time to comply with these commands. Nicol further stated that, after Porzio broke the passenger side window, the defendant continued to not comply with his instructions. Specifically, Nicol indicated that after he and Porzio had grabbed the defendant's arms to secure him, the defendant "was still

contradicts version of events told by party, utterly discrediting that party's version of events so that no reasonable jury could have believed it, court should not rely on "visible fiction" for purposes of ruling on motion for summary judgment). We are not persuaded, therefore, by the defendant's argument that the video demonstrates that he did not interfere with the officers during this traffic stop.

tensing up and not being fully compliant with us, and not [letting] himself get out of the vehicle. He began to tense up his arms. Not fully resisting, but also not complying with our commands."

"Section 53a-167a (a) provides in relevant part: A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties. Accordingly, [t]he elements of this crime . . . are (1) a person obstructs, resists, hinders, or endangers, (2) a peace officer, (3) while the officer is in the performance of his or her duties." (Internal quotation marks omitted.) *State* v. *Lamantia*, 181 Conn. App. 648, 654, 187 A.3d 513 (2018), aff'd, 336 Conn. 747, 250 A.3d 648 (2020). "[T]he four means of interfering listed in [§ 53a-167a] are not conceptually distinct, and do not constitute disjunctive methods by which interfering with an officer can be committed. . . . Rather, they are merely descriptive of possible ways that a single crime might be committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 832–33 n.13, 911 A.2d 1086 (2007).

Our Supreme Court has explained that "[t]hose words [used in § 53a-167a (a)] . . . have a broad scope. By using those words it is apparent that the legislature intended to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . The [defendant's] act, however, does not have to be wholly or partially successful . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute. . . . Thus, [t]he broad intent of § 53a-167a is to prohibit conduct that

hampers the activities of the police in the performance of their duties . . . .” (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 833; see *State* v. *Silano*, 96 Conn. App. 341, 351–52, 900 A.2d 540, cert. denied, 280 Conn. 911, 908 A.2d 542 (2006); see also *In re Adalberto S.*, 27 Conn. App. 49, 56, 604 A.2d 822 (purpose of § 53a-167a is to ensure orderly compliance with police during performance of their duties and any act intended to thwart this purpose constitutes violation of statute), cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). Our Supreme Court has explained further that this statute proscribes active or passive conduct that hinders, obstructs, or impedes a police officer in the performance of his or her duties. *State* v. *Aloi*, supra, 280 Conn. 834.

On appeal, the defendant argues that there was “no reliable evidence the defendant obstructed, resisted, or hindered law enforcement from opening the door of the vehicle or by failing to get out of the vehicle.” He further asserts that nothing about his behavior indicated resistance, as he was not in control of the vehicle, and that there was no time for him to comply with the commands of the police officers to exit the vehicle. Finally, he contends it was clearly erroneous for the court to credit testimony from law enforcement personnel that was “internally contradictory and differed from that which was reduced to writing in police reports.” We conclude that the trial court, as the arbiter of credibility and fact finder, was free to determine that the defendant interfered with the police by resisting their efforts to remove him from the vehicle and place him under arrest, and, therefore, its determination that the state produced sufficient evidence, under the preponderance standard, that he violated § 53a-167a (a) was not clearly erroneous and supported the court’s ultimate determination that he violated the terms of his probation.

In its oral decision, the court specifically found the testimony of the police officers to be credible. It referred to the testimony that the defendant, while not actively fighting with the police officers, made it difficult to remove him from the vehicle. This type of resistance to efforts to place an individual in police custody has been found to constitute a violation of § 53a-167a. See *State* v. *Calabrese*, 116 Conn. App. 112, 125–26, 975 A.2d 126 (defendant pulled away from police officers during handcuffing process), cert. denied, 293 Conn. 933, 981 A.2d 1076 (2009), and cert. denied, 293 Conn. 933, 981 A.2d 1076 (2009); *State* v. *Walters*, 111 Conn. App. 315, 322–23, 959 A.2d 13 (2008) (defendant, after informing officers that he would resist arrest, straightened arms to make it difficult for officer to lock handcuffs), cert. denied, 290 Conn. 904, 962 A.2d 795 (2009); *State* v. *Wearing*, 98 Conn. App. 350, 352–53, 908 A.2d 1134 (2006) (after police placed handcuff on his left wrist, defendant became rigid and stiffened his right arm, and ignored police commands to place right arm behind his back), cert. denied, 281 Conn. 905, 916 A.2d 47 (2007); *State* v. *Peay*, 96 Conn. App. 421, 442–44, 900 A.2d 577 (defendant repeatedly refused commands to place hands behind back and to go into police cruiser and physically struggled with arresting police officers), cert. denied, 280 Conn. 909, 908 A.2d 541 (2006); *In re Adalberto S.*, supra, 27 Conn. App. 55–56 (respondent physically resisted police officers, which obstructed them from achieving their objective, which was to handcuff respondent and place him in custody).

In the present case, the trial court, as the finder of fact, was free to credit the testimony from the police officers that the defendant did not comply with their instructions and resisted their efforts to place him in handcuffs. There was evidence that the defendant did not immediately comply with commands to exit, requiring Porzio and Nicol to reach into the vehicle and grab

the defendant's arms to secure and remove him from the interior. Porzio specifically testified that the defendant continued to pull away after he reached into the vehicle and grabbed the defendant's arm. See *State* v. *Calabrese*, supra, 116 Conn. App. 117, 125–26. He further testified that, in addition to tensing his arms *and pulling away from the officers*, the defendant did not exit the vehicle when directed to do so by the police. Porzio also testified that the defendant was not compliant until he had been handcuffed by the officers.

The evidence in the record is sufficient to support the court's finding that the defendant's conduct hampered the activities of the police in the performance of their duties. See *State* v. *Aloi*, supra, 280 Conn. 833. Thus, contrary to the defendant's argument, there was sufficient evidence in the record that the defendant violated § 53a-167a. Additionally, to the extent that the officers' testimony was contradictory, we simply note that "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony." (Internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 142 n.6, 170 A.3d 120 (2017). Given our deferential review of the facts found by the trial court, and the applicable burden of proof, which requires that the evidence induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation; *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994);[9] we conclude that the determination

[9] See *State* v. *Benjamin*, 299 Conn. 223, 235–36, 9 A.3d 338 (2010) (all that is required in probation revocation hearing is that court is satisfied that probationer has not met terms of probation by preponderance of evidence and it is not required that proof of criminal conduct be sufficient to sustain criminal conviction); *State* v. *Megos*, supra, 176 Conn. App. 139 (purpose of probation revocation hearing is not to determine whether defendant had, beyond reasonable doubt, violated criminal law but rather to determine whether defendant's conduct constituted act sufficient to support revocation of probation and need only be proved by preponderance of evidence).

by the trial court that the state produced sufficient evidence that he had violated § 53a-167a, and thus his probation, was not clearly erroneous.

Next, we consider whether the court properly determined that the defendant violated his probation by constructively possessing illegal drugs and a firearm. Porzio testified that, after the occupants of the vehicle had been removed and handcuffed, he located "contraband" in the interior of the vehicle. In the front cupholder, he found two pills that appeared to be ecstasy, and, in the backseat behind the passenger seat, a backpack containing fifty-six plastic bags of a green, leaf-like substance that, based on its smell and appearance, appeared to be marijuana. A firearm also was discovered in the backpack.[10] He stated specifically that neither the drugs nor the firearm were found on the defendant's person. There was testimony that the officers, based on their training and experience, believed that the marijuana and ecstasy were packaged for sale.

The defendant called Norwood as a witness. He testified that the illegal drugs and the firearm found in the vehicle, which was owned by his mother, belonged to him. Norwood further stated that, in September, 2023, he had pleaded guilty to charges related to these contraband items. He also claimed that the defendant was unaware of the presence of these items when he entered the vehicle six or seven minutes before the police arrived.

In his argument to the trial court, the prosecutor acknowledged that "[t]his has been a constructive possession case from the onset." He claimed, however, that the defendant had "access" to the pills in the cup holder and the backpack in the backseat of the vehicle. The

---

[10] Porzio testified that he removed the backpack from the backseat of the vehicle in order to search it.

prosecutor then argued that Norwood was not a credible witness. Defense counsel countered that there was no evidence to support a finding that the defendant was aware of the contraband in the vehicle.

In its oral decision, the court credited the testimony of the officers, and discredited Norwood's testimony. It found that Norwood's efforts to elude the police allowed for a reasonable inference that the defendant knew about the backpack in the backseat. Additionally, the court explained that the smell of the marijuana would have alerted the defendant to its presence in the vehicle. Thus, if the defendant had nothing to do with the contraband, he would have exited the vehicle and departed immediately. The court further posited that the defendant would have exited the vehicle when Norwood was driving into the two police cars if he did not have any connection to the contraband.

On appeal, the defendant asserts that there was insufficient evidence to support the court's finding that he constructively possessed the illegal drugs or the firearm found in the vehicle. Specifically, he argues, inter alia, that "[n]o officers testified to a DNA match to the defendant on the firearm. . . . The state's evidence did nothing beyond establishing that the defendant was in the car, thereby providing temporal and spatial proximity and nothing more to tie the defendant to the contraband. . . . His mere presence in the vehicle is not enough to establish constructive possession." The state counters that the evidence and reasonable inferences drawn therefrom supported the court's findings of constructive possession of contraband in violation of the terms of probation. We agree with the defendant.

As we have noted, the court concluded that the defendant violated the terms of his probation by constructively possessing illegal drugs and a firearm. "The term

[p]ossess means to have physical possession or otherwise to exercise dominion or control over tangible property . . . . General Statutes § 53a-3 (2). We have previously explained that there are two kinds of possession, actual and constructive. Actual possession requires the defendant to have had direct physical contact with the [contraband]. . . . Alternatively, constructive possession is possession without direct physical contact. . . . It can mean an appreciable ability to guide the destiny of the [contraband] . . . and contemplates a continuing relationship between the controlling entity and the object being controlled. . . . To establish constructive possession, the control must be exercised intentionally and with knowledge of the character of the controlled object. . . . A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . . General Statutes § 53a-3 (11).

"Moreover, [when] the defendant is not in exclusive possession of the premises where the [contraband is] found, it may not be inferred that [the defendant] knew of the presence of the [contraband] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . Such evidence may include, for example, connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise . . . . Accordingly, although mere presence is not enough to support an inference of dominion or control, [when] there are other pieces of evidence tying the defendant to dominion [or] control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . [S]ee also *State* v. *Rhodes*, [335 Conn. 226, 241, 249 A.3d 683 (2020)] (some connection or nexus individually linking

the defendant to the contraband is required . . .); *State* v. *Delossantos*, 211 Conn. 258, 278, 559 A.2d 164 ([p]resence alone, unilluminated by other facts is insufficient proof of possession . . .), cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989)." (Citations omitted; internal quotation marks omitted.) *State* v. *Dawson*, 340 Conn. 136, 147–49, 263 A.3d 779 (2021). We emphasize, however, that "mere [temporal and spatial] proximity to contraband, in the absence of other incriminating conduct, statements, or circumstances, is insufficient to support a finding of constructive possession." Id., 152; see also *State* v. *Porfil*, 191 Conn. App. 494, 527, 215 A.3d 161 (2019), appeal dismissed, 338 Conn. 792, 259 A.3d 1127 (2021); *State* v. *Nova*, 161 Conn. App. 708, 724, 129 A.3d 146 (2015).

In the present case, the court found that the backpack containing the 239 grams of marijuana in fifty-six plastic bags and a firearm was located on the floor in the rear seat area of the vehicle directly behind the defendant. It further found that the two pills and the empty plastic baggies were located in the center console next to the defendant. The court stated: "These items were consistent with evidence of sale or possession with intent to sell controlled substances." It next rejected the testimony of Norwood, who had claimed that the illegal drugs and the firearm found in the vehicle belonged solely to him.[11] Next, it remarked that the occupants of the vehicle shared the intent to elude the police.[12]

---

[11] We recognize that the court, in its role of the trier of fact, was free to discredit his testimony. See, e.g., *State* v. *Josephs*, 328 Conn. 21, 38, 176 A.3d 542 (2018). The court's rejection of Norwood's claim of ownership of the contraband, however, cannot form the basis of the finding that the defendant was the individual who possessed these items. See *State* v. *Hart*, 221 Conn. 595, 604–605, 605 A.2d 1366 (1992); *State* v. *Coleman*, 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988); see generally *State* v. *Carter*, 196 Conn. 36, 50, 490 A.2d 1000 (1985) (*Shea, J.*, dissenting) (trier cannot make affirmative factual finding from testimony that has been obviously rejected).

[12] We cannot discern the basis for the trial court's remark regarding a shared intent to elude the police by the defendant and Norwood.

The court then recounted the defendant's prior convictions for drug-related offenses, and that the officers had smelled marijuana in the car. It reasoned that, having been inside the vehicle for six to seven minutes, he must have known that there was marijuana present, given the odor. The court further stated that, given his probation status, the defendant would have exited the vehicle if he had no connection to the contraband.

In determining that the defendant constructively possessed the backpack containing the contraband, the court appears to have focused on the fact that the defendant must have been aware of its presence due to the odor of the marijuana. Awareness of a prohibited item, however, does not equate to possession.[13] First, we note that, "if the contraband is found in a place where the defendant does not have exclusive possession, the presence of the defendant near the contraband without more is insufficient to support an inference of possession." *State* v. *Nova*, supra, 161 Conn. App. 719; see also *State* v. *Williams*, 110 Conn. App. 778, 785–86, 956 A.2d 1176 (mere presence is not sufficient to support inference of dominion and control when illegal drugs are found in area where defendant does not have exclusive possession and other pieces of evidence were necessary to establish that defendant knew substance in question was drug, knew of its presence, and exercised dominion and control of it), cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). Additionally, we emphasize that, "[t]o mitigate the possibility that innocent persons

---

[13] The mere smell or presence of marijuana in the vehicle would not necessarily have given the defendant notice or reason to believe that Norwood was engaged in criminal activity. We note that the use and possession of limited quantities of cannabis has been legal in Connecticut since July 1, 2021. See *In re Julien F.*, Superior Court, judicial district of Windham, Juvenile Matters at Willimantic, Docket No. CP-19-017958-A (April 25, 2023); see also General Statutes § 21a-240 (7) and (29) (defining cannabis-type substance and marijuana); General Statutes § 21a-279a (setting for limits for legal possession of cannabis).

might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." (Internal quotation marks omitted.) *State* v. *Gainey*, 116 Conn. App. 710, 721, 977 A.2d 257 (2009). The state was required to prove that the defendant exercised dominion and control over the items in the backpack and the center console, in addition to knowledge of their presence and character. See id.

There is no evidence, or inference that can be drawn from the evidence presented at the probation revocation hearing, to establish the defendant's dominion and control over the contraband found in the vehicle. In other words, there is no "compelling correlation" between the defendant's actions, such as suspicious movement toward the backpack or the pills, and the conclusion that he controlled the contraband. *State* v. *Nova*, supra, 161 Conn. App. 722–23. The defendant was neither the driver nor the owner of the vehicle. Cf. *State* v. *Winfrey*, 302 Conn. 195, 211–13, 24 A.3d 1218 (2011) (defendant was driver and defendant's wife was owner of vehicle where narcotics were found, suggesting awareness and control of what was inside and, additionally defendant swallowed drugs, was daily user of illegal drugs, and was in possession of rolling papers and large amount of cash, all of which supported finding that he knew of, and exercised dominion and control over said drugs); *State* v. *Williams*, supra, 110 Conn. App. 787–88 (evidence and reasonable inferences drawn therefrom of cocaine located within arm's reach of defendant, who moved his location after police stop in attempt to distance himself from cocaine, appeared fidgety, gave police false name and refused to be fingerprinted permitted jury to find defendant constructively possessed cocaine). No items associated with the sale of illegal drugs that were found in the vehicle were connected

to the defendant. After Norwood was removed from the vehicle and placed in handcuffs, when asked what was in the car, he, and not the defendant, admitted to the police officers that there was "weed" in the vehicle. The defendant's DNA was not found on the firearm. One of the officers acknowledged that he did not observe the defendant engage in any illegal activities during the police stop. In short, from the time of the arrival of the police until he was removed from the interior of the vehicle and placed in handcuffs, there was no evidence linking the defendant to the contraband, aside from its presence within a backpack on the backseat floor area and the center console.

We are guided further by this court's decision in *State v. Fermaint*, 91 Conn. App. 650, 881 A.2d 539, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005). In that case, the police received a tip from a confidential informant that a woman in a vehicle parked in a housing project with two males, including her boyfriend, was in possession of cocaine. Id., 652 After surveilling the vehicle and observing it drive away, the police effectuated a traffic stop. Id. The occupants were observed engaging in furtive movements. Id. The police officer saw the defendant, who was in the backseat, make a "bending movement" toward the woman in the passenger seat, who then put "something" down her pants. Id. The officer noticed a rocklike substance on the seat next to the defendant that appeared to be crack cocaine. Id., 652–53. A subsequent search of the car revealed the presence of marijuana on the front carpet area. Id., 653. The woman possessed a plastic bag containing cocaine and $120 in cash concealed on her person. Id. The defendant was carrying an address book containing names that were familiar to the police officers but was not in possession of drugs and carried only $2 in cash. Id. The defendant was found to have violated his probation for possession of narcotics. Id.

On appeal, the defendant claimed that there was insufficient evidence to find that he possessed the seized contraband. Id., 654. After setting forth the relevant legal principles, we began the analysis of his appellate claim by stating: "The crumbs of crack cocaine were not found on the defendant's person. Furthermore, he was not in control of the location where the crumbs were found. The record is devoid of any incriminating statements made by the defendant. In order to infer that the defendant in this case knew of the presence of the narcotics and had control of them, therefore, there must be circumstances tending to buttress such an inference." Id., 656. We then noted that the trial court had relied on the following facts to support the inference of possession by the defendant: First, he accompanied the woman who had been the subject of the report to the police by a confidential informant that she was in possession of crack cocaine; second, after the traffic stop, there were furtive movements in the car, including that the defendant looked back at the police and leaned toward the woman; third, crumbs of crack cocaine were found next to the defendant; fourth, the woman stuffed crack cocaine down her pants; and fifth, the defendant was carrying an address book containing the names, addresses, and telephone numbers of individuals familiar to the officers. Id., 656–57.

This court explained that the confidential informant's call to the police did not permit the inference that the defendant knew of the crack cocaine or exercised dominion and control over it. Id. This tip only alerted the police that the woman possessed the illegal substance and that the defendant was with her; it did not provide information that the defendant purchased, sold, or used cocaine. Id., 657. The subsequent searches confirmed the information provided by the informant, and that the defendant was not in possession of cocaine,

and only possessed $2 in cash, which would not support an inference of knowledge or control of narcotics. Id.

With regard to the crumbs of crack cocaine found next to the defendant, we reasoned that this was "no more than a temporal and spatial nexus between the defendant and the contraband, which is insufficient proof of possession." Id. Additional evidence was necessary to connect the defendant to the dominion and control of the cocaine. Id., 657–58. As to the evidence of furtive movements, we reasoned that nondescript actions, looking back at the police after a traffic stop had been initiated, and leaning toward someone in the front seat did not create or support an inference of possession of cocaine without more evidence to support such an inference. Id., 659–660. Additionally, there was no evidence that the defendant had extended his arms toward or handed contraband to the woman in the front passenger seat. Id., 660. "Furthermore, there was no fingerprint analysis of the bag of crack cocaine . . . nor was there any chemical analysis of the larger piece of crack cocaine and the crumbs to establish a connection between the substances." Id., 661. Finally, the officer's opinion that the names and information contained in the address book "might be related to drug trade" did not permit an inference of possession by the defendant. Id.

This court rejected the state's argument that it had met its burden of proving possession of narcotics under the preponderance of the evidence standard. Id., 662–63. "Here, the narcotics were not on the defendant's person, they were not found in a place under his exclusive or shared control, the police did not observe or videotape him engaging in any transaction, there were no controlled purchases from him, the police did not observe him pass anything to the other occupants in the car, he did not flee, he did not attempt to conceal the crumbs of crack cocaine and he did not make any

incriminating statements. The only evidence offered to prove that the defendant was in possession of the crumbs of crack cocaine was his proximity to the crumbs and that he engaged in 'furtive' movements. Under the preponderance of the evidence standard, that evidence is insufficient to prove possession of narcotics." Id.

Similarly, in the present case, there was insufficient evidence for the court to find that the defendant was in possession of the contraband found inside the vehicle. Specifically, there was nothing in the record to support the finding that he exercised dominion and control over the contraband. Its presence near him inside the vehicle, without more, does not meet the necessary threshold to support the court's finding that he violated his special conditions of probation. Simply stated, there was no evidence that connected the defendant with possession of the contraband found inside the vehicle.

We next turn to the scope of our remand. In doing so, we are guided by this court's recent decision in *State* v. *Sykes*, supra, 232 Conn. App. 753. In that case, the defendant pleaded guilty under the *Alford* doctrine to two counts of sexual assault in the fourth degree, two counts of risk of injury to a minor, and possession of child sexual abuse materials in the second degree. Id., 755; see *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Following a period of incarceration, the defendant began serving his term of probation. *State* v. *Sykes*, supra, 755. The defendant's probation officer subsequently applied for an arrest warrant after an investigation indicated that the defendant had violated the conditions of his probation. Id., 759. The trial court found three grounds on which the defendant had violated his probation. Id., 768. On appeal, we agreed that the evidence supported the finding that the defendant had violated the conditions that he not possess sexually explicit materials or utilize

unapproved computers but was insufficient to support the finding that he had violated the condition that required him to take polygraph examinations. Id., 770, 772, 774.

This court observed that, "to support a judgment of revocation of probation, [o]ur law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." (Internal quotation marks omitted.) Id., 770; see also id., 778. As a result of the determination that there was insufficient evidence to support the finding that he had violated the condition requiring him to undergo polygraph examination, this court concluded that the appropriate course of action was to set aside his sentence and remand for resentencing. Id., 778. Specifically, this court explained: "We are guided by our Supreme Court's decision in *State* v. *Benjamin*, 299 Conn. 223, 9 A.3d 338 (2010). In *Benjamin*, our Supreme Court considered the appeal of a defendant who had been found in violation of his probation on two grounds: that he had assaulted an elderly person and that he had possessed narcotics. . . . On appeal to this court, the defendant did not challenge the latter finding but argued that the former was predicated on improperly admitted and otherwise insufficient evidence; he further claimed that the trial court had abused its discretion by imposing a four year term of incarceration that was based, in part, on its conclusion that he had assaulted an elderly person. . . . This court concluded that it was unnecessary to review the defendant's challenges to the trial court's finding that he had assaulted an elderly person because the trial court's unchallenged finding that the defendant had possessed narcotics constituted a legally sufficient basis for revoking his probation. . . . Our Supreme Court disagreed. The court explained that this court had failed to recognize that the defendant's briefing

. . . also addressed the dispositional phase of the probation proceeding. . . . Presumably, in the dispositional phase, the question of whether, in addition to possessing narcotics, the defendant also had committed the assault would have had some bearing on which disposition the court ordered and, if the court ordered the defendant to serve some portion of his suspended sentence as to that disposition, what that sentence would be. . . . The court went on to conclude that there had been sufficient evidence that the defendant was guilty of assaulting an elderly person, noting that that determination obviate[d] the need for this court to direct the Appellate Court to remand the case to the trial court for a new dispositional phase . . . to consider whether the sentence based solely on the defendant's possession of narcotics was appropriate or whether to reduce the sentence in the absence of sufficient evidence of assault. . . .

"In the present case, the record indicates that the court's dispositional determination may have been impacted by its conclusion that the defendant had violated his polygraph condition. In particular, the court's comments that the defendant had been researching . . . in a possible attempt to [build] a defense for refusing to take the . . . examination, suggest that it may have viewed the defendant's refusal to take a polygraph examination [or] its equivalent as bad faith misconduct warranting the imposition of a more severe sentence than he might otherwise have received. At the very least, we cannot be confident that the court would not have exercised its discretion differently in the dispositional phase had it sentenced the defendant only on the basis of the two grounds for finding the defendant in violation of his probation that were sufficiently supported by the record. . . . We therefore conclude that a remand for resentencing is appropriate in light of our conclusion that the evidence was insufficient to support

the court's finding that the defendant violated the condition of his probation requiring him to take polygraph examinations." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 778–80. We noted that "we express[ed] no view as to the appropriate sentence, and we commit[ted] that determination to the sound discretion of the trial court." Id., 780.

In the present case, the court remarked at the outset of the dispositional phase that the defendant previously had been convicted for offenses involving the possession of and intent to sell illegal drugs. Additionally, the court noted that the defendant had access to a firearm at the time of his arrest. It also stated that the defendant had "decided that he's going to violate the law and sell drugs or sell marijuana . . . ." The court iterated that it had rejected the defendant's claim that he had not possessed the contraband found in the vehicle. After hearing from the defendant, the court imposed a total effective sentence of eight years of incarceration. On the basis of these statements, we cannot be confident that the trial court would not have exercised its discretion differently in the dispositional phase had it sentenced the defendant solely on the basis of violations of probation for which there was sufficient evidence in the record. See, e.g., id., 779–80.

The judgments are reversed only as to the sentences imposed and the cases are remanded with direction to resentence the defendant; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.